| 77 | 247 |
| 111 | 123 |
| 77 | 247 |
| 144 | ³312 |

BENJAMIN F. ROSE, GUARDIAN AND TRUSTEE, v. JOB C. EATON, SHERIFF, AND JACOB MCCARTY, DEPUTY-SHERIFF.

*Replevin—Possessory action—Review of non-jury case in Supreme Court—Construction of will.*

1. Where it appears from an examination of the record that there are no material *disputed* facts to be settled in the case, but that the whole issue turns upon the construction of a will, and is a matter of law, the case is open to review on a general exception to the judgment and its entry.

2. The action of replevin in this State is a possessory one, and a stranger to the property is not concerned with the title of one in actual and peaceable possession.

3. Unless the defendants in a replevin suit by a judgment debtor for property seized on an execution against him, and of which he was in the peaceable possession, can show that it was ·his property, at the time of such seizure, they will fail to establish their right to interfere with such possession; and they cannot preclude his recovery by showing ownership in third persons not joined with him as plaintiffs.

4. Where, in a replevin suit by a father for wheat belonging to his five children as tenants in common, which had been levied upon by *his* creditors, he showed himself in the peaceable and actual possession of the property, as the legal custodian of *three* of his children, the defendant cannot question his right to the possession of the wheat belonging to the other *two* children, or demand that the suit to recover the *whole* property should be brought by *all* of the children.

5. The will set forth in the opinion is construed as vesting the title to the devised land in plaintiff's children, and it is held that the clause in the will giving plaintiff his support and living out of the estate of the children does not give him a life-estate therein, nor does the fact that he has appropriated all the income of the estate to his own use since the death of the testator, or that he has leased the farm in his own name, change the rights of the children.

Error to Monroe. (Kinne, J.) Argued October 9, 1889. Decided November 1, 1889.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*John O. Zabel* and *G. Morris,* for appellants.

*H. A. Lockwood* and *I. R. Grosvenor,* for plaintiff.

[The opinion fully states and discusses the positions of counsel.—REPORTER].

MORSE, J. The bill of exceptions and the errors assigned in this Court confine us to an examination of the whole case upon the facts, to ascertain whether the facts support the judgment of the circuit court, which was in favor of the plaintiff. The case was tried by the circuit judge in the Monroe circuit, without a jury. No findings of fact were filed, and none were requested by either party.

The only exception upon which the assignments of error are or can be based is the following:

"Whereupon the issue so joined as aforesaid was submitted to the said court as aforesaid; and thereupon, on November 22, 1888, the said court rendered judgment in favor of the said Benjamin F. Rose, guardian and trustee, as plaintiff, and against the said Job C. Eaton and Jacob McCarty, as defendants, for the sum of $101 damages, besides plaintiff's costs to be taxed; and the clerk of said court did forthwith enter in the journal of said court

the said judgment as rendered by said court. To the entry of said judgment, the determination of said court, and the several rulings of the said court, as set forth in the testimony of said witnesses, the counsel for said defendants did then and there except."

No errors are assigned on the rulings as to the reception or rejection of evidence. The only exception is to the judgment, and the entry of the same. The entry of the judgment is correct in form.

It is contended by the appellee that the judgment must be affirmed without review of the facts or the law as applicable to the same; that a general exception to a judgment like this, if the judgment is good in form, is not available to raise any questions in the Supreme Court; citing *Chatterton v. Parrott*, 46 Mich. 432 (9 N. W. Rep, 482); *Yelverton v. Steele*, 40 Id. 538, 540; *Tuxbury v. French*, 41 Id. 7, 10 (1 N. W. Rep. 904); *Treasurer of Berrien Co. v. Bunbury*, 45 Id. 79, 83 (7 N. W. Rep. 704); *Green v. Gill*, 47 Id. 86 (10 N. W. Rep. 119); *Irwin v. Schlief*, 48 Id. 237 (12 N. W. Rep. 220); *Butts v. Davis*, 50 Id. 310 (15 N. W. Rep. 486).

An examination of the record shows that there are no material disputed facts to be settled in the case. The whole issue turns upon the construction of a will, and is a matter of law. We shall therefore hold that the case is open to review here.

The plaintiff, as guardian and trustee, brought replevin against the sheriff and a deputy-sheriff of Eaton county for a quantity of wheat raised on certain premises, and levied upon and taken into possession by these officers, as his property, by virtue of an execution running against him. The lands upon which the wheat was grown were owned, in 1875, by Oliver T. Rose, the father of the plaintiff. In that year Oliver T. Rose died, leaving a last will and testament, which was duly admitted to pro-

bate. This will made the plaintiff executor. He qualified as such. The estate was settled, and the executor discharged, February 1, 1887. The will provided:

"*First.* I give and bequeath unto the heirs of my son B. F. Rose that his wife, Susan, has by him, or may have by him hereafter,—the said wife that he is now living with,—all the farm which I now live on, being my homestead; and also the Wing & Cole tract of land adjoining east from said homestead, situated in the township of Summerfield, and all thereto belonging. I also declare it to be my last will and bequest that my son B. F. Rose shall have his support and living out of the estate that I have hereby given to his children, so long as he shall live.

"*Second.* I give, devise, and bequeath to my beloved wife, Sylvia, one-third of the profits of my homestead farm on which I now live, and one-third of the Wing & Cole tract, as long as she shall remain my widow.

"*Third.* I also give and bequeath and devise unto my granddaughter Louisa Rose, daughter of my son Oliver T. Rose, Jr., deceased, five hundred dollars ($500) out of the proceeds of my personal estate.

"*Fourth.* I will, devise, and bequeath that after the payment of my just debts, and of my last sickness and funeral expenses, the remainder and residue of all my estate, real and personal, consisting of land, money, mortgages, and other evidences of indebtedness, shall be equally divided between my son, B. F. Rose, my grandson Royal Barber, son of my daughter Elizabeth, deceased, and my daughter Mary D. Rose, and their heirs, by my administrator, and, in case of the death of any of the above-mentioned heirs, the property hereby devised to go to next nearest of kin, equally."

It is claimed by the plaintiff that under the will, and by its terms, the land upon which the wheat in controversy was grown belonged, at the time of the levy, to the children of the plaintiff born of his wife, Susan, and now belongs to them. These children, living at the time of said levy, and at the commencement of this suit, were Minnie A. Gramkie, about 25 years of age, and married and living away from home, and Oliver T., Laura, Eliz-

abeth, and Jennie, minors, living with the plaintiff.

January 24, 1880, the plaintiff was by the probate court of Monroe county appointed guardian unto his children, described in the letters of guardianship as Minnie A., Oliver T., Laura J., and Henrieta E. Rose, and Susan A. Vandercook. The last-named died without issue before the levy on this wheat, and Jennie has been born since the issue of said letters of guardianship. After the death of Oliver T. Rose, the father of plaintiff, the farm was managed by plaintiff as executor until the estate was settled and his discharge from his trust. None of the children except Minnie are now of age. Minnie married since the appointment of her father as guardian, and soon after or just before she was 21 years of age. Since that time he has managed the farm, as he claims, as guardian and trustee of the children who own it. He has never rendered any account of such management as guardian to the probate court, and has kept no particular account between himself and the children. He has boarded, clothed, and otherwise maintained all of them, except the married daughter, who has been married and lived away from home for four years. He fitted her out at the time of her marriage, and she had some provisions from the farm the first year after she was married.

The wheat taken under the writ in this case was raised on shares by one Stull, who had leased the premises of plaintiff for three years, with the privilege of five years. The lease was made by the plaintiff, as it appears in the writing, as Benjamin F. Rose, without any designation of guardian or trustee. One-half of the crops raised on the place were by the lease to be delivered to plaintiff in the half-bushel, as his share.

May 10, 1875, Sylvia, the widow of Oliver T. Rose, for and in consideration of $400 to be paid her annually by said Benjamin F. Rose, by quitclaim deed conveyed to

plaintiff all her right, title, and interest in the real estate of her husband, and all her claims against his estate.

It will be noticed that the will provides that the plaintiff shall have his support and living out of the estate devised to the children of himself and his wife, Susan, and the wife of the testator, Sylvia, is to receive, as long as she remains his widow, one-third of the profits of the homestead and the Wing & Cole lands. This share of the widow the plaintiff held at the time the wheat was grown and harvested. When the wheat grown by Stull in the year 1888 was threshed, the half that was going to plaintiff under the lease was set apart for him,—about 208 bushels. This the officer levied upon and seized, releasing and setting off to him 75 bushels, retaining 133 bushels, for which this suit is brought.

It is claimed by the defendants that this land did not vest in the children; that the plain intent of the will was to give the care, possession, and management of the homestead farm to plaintiff while he lived; that, Benjamin F. Rose being still living, his heirs cannot now be determined. One has been born since the death of Oliver T. Rose. One has also died without issue. Those now living may all die before the termination of plaintiff's life, and other heirs may be yet born to him by his wife, Susan, who is still living; so that his heirs may prove to be persons not yet in being. That Benjamin F. Rose has a life-interest in the farm subject to the widow's claim of one-third of the profits, which has been purchased by plaintiff and now belongs to him, and that the conduct of Rose in the management of said farm, and disposition of the grain and produce raised upon it since the death of his father, has been a practical construction of the will as claimed by defendants, to wit, a life-estate in the plaintiff.

Rose did not show upon the trial, or allege in his declaration, that he was trustee for any particular person or persons. The defendants further claim that, even if it be found that the homestead did vest in the children, the plaintiff must succeed in this suit, if at all, as guardian of the children; that he cannot recover in his own right, nor as trustee; and he is not now the guardian of Minnie, who has been of full age and married for four years, and Jennie has been born since he was appointed guardian, and has never had a general guardian appointed; that, being natural guardian of Jennie, he might have been entitled to the appointment of next friend to bring suit, but nothing of this kind was done; that, therefore, he had no right to sue for the interest of these two children, and that he could recover for only three-fifths of the wheat taken, there being five children now living.

We think that the title to the land is in the children of the plaintiff, and Susan, his wife. The clause in the will that the plaintiff should have his support and living out of the estate of the children does not give him a life-estate therein. Nor does the fact that he has appropriated all the income of the farm to his own use since the death of his father, or that he has leased the premises in his own name, change the rights of these children. He claims, and it is not disputed, that there has been no profit from the homestead, and that the proceeds of the same have all been used to support himself and the children. What he has done with the children's share of such proceeds over and above his living,—whether or not he has accounted to the probate court, or whether he has kept an account with the children,—does not concern his creditors, who have no interest in or lien upon the children's property. If he has systematically set himself about cheating his children out of the proceeds of this farm which belongs to them, it does not authorize his

creditors to seize such property, before he has converted it, to pay his debts. The 208 bushels of wheat was the property of the children, unless it can be said to have been profits of which he was entitled to one-third as assignee of Sylvia. But the showing is that there have been and are no profits. Under the lease to Stull, the plaintiff furnished one-half of all the seed used and stock kept on the farm, paid the land tax and half of the threshing bills, and there is nothing to show that his statement that there were no profits is not a true one. He had the management and control of the farm at and before his father's death, and has had it ever since. He testifies that he is managing and taking care of it for the benefit of his children, in whose behalf he made this lease. As guardian of three of them he has the right to do this. The daughter of age alone can complain as to her share, and, as the natural guardian of Jennie, he is the proper person to care for her share until a guardian is appointed, to which appointment he would be entitled.

We think the probable intent of the testator was that during his life the plaintiff should work, care for, and manage this farm, having his living and support out of it, one-third of the profits, if any, to go to the widow, Sylvia, and the balance of the profits to the children. If he had intended to give a life-estate to the plaintiff, he would undoubtedly have said so. He meant, however, it appears to me, that, if anything was realized out of the farm over and above the living and support of plaintiff, it should belong to the children. The fact that the plaintiff received about $8,000 worth of property under the fourth clause of the will confirms the opinion that only what was given him in express terms—his support and living—was devised, or intended to be devised, to him out of the homestead and the Wing & Cole tract of land.

Having the rightful possession of this wheat, as the property of his children, at the time it was levied on, the technical objections to his suit are of but little moment.

It is admitted that he told the officers that the wheat belonged to his children, and forbade their taking it. He was the proper custodian of this property, and it was lawfully in his possession. No one had a better right to such possession than he, and no one could question such possession excepting the married daughter as to her share of the same, and a lawfully appointed guardian of Jennie as to her share. But the daughter does not complain, and Jennie has no guardian save a natural one, who is her father, the plaintiff. He had the right to regain this lawful possession by the writ of replevin, and it is not important in what technical character he sues. He might have sued in his own name, and showed upon the trial, as he did in the present case, that he was in the actual and lawful possession of the property when it was taken. The action of replevin in this State is a possessory one, and a stranger to the property is not concerned with the title of one in actual and peaceable possession. Unless the defendants in this suit could show that the wheat was the property of Benjamin F. Rose at the time they seized it upon an execution against him they had no right to meddle with his possession of it, and they could not preclude his recovery of such possession by showing an interest in the same in third parties, and that such third parties were not joined with him in the suit. See *Van Baalen v. Dean,* 27 Mich. (annotated edition) 104 and notes.

This suit was brought to regain the lawful possession of the plaintiff. He showed himself in the peaceable and actual possession of the property as the legal custodian of three of his children, and that the wheat, beyond

question, belonged to his five children as tenants in common. The defendants, showing no claim against, or right of possession to, the children's property, could not question his right of possession to the wheat belonging to Minnie A. and Jennie, or demand that the suit to recover the whole property should be brought by all the children. They took it from the plaintiff without right, and he wa. entitled to its return or its value.

The judgment is affirmed, with costs.

The other Justices concurred.